UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HEATHER FONTANA,

                                      Plaintiff,                      **REPORT AND**
                                                                      **RECOMMENDATION**
                -against-                                               **CV 19-1587 (JMA) (ARL)**

BOWLS AND SALADS MEXICAN
GRILL INC., ET. AL
                                      Defendants.
----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

       Plaintiff, Heather Fontana ("Plaintiff"), commenced this action against defendants, Bowls and Salads Mexican Grill Inc. d/b/a/ Alberts Pizza, Luis Rojas and Alfred [last name unknown] seeking damages allegedly sustained due to (1) sex-based discrimination in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); (2) hostile work environment in violation of Title VII and the NYSHRL (3) retaliation in violation of Title VII and the NYSHRL; and (4) constructive termination. Defendants have not answered or moved with respect to the complaint. On August 30, 2019, Plaintiff moved for the entry of a default judgment. On April 1, 2020, District Judge Azrack granted the motion for entry of a default judgment as to defendants Bowls and Salads Mexican Grill Inc. d/b/a/ Alberts Pizza and Luis Rojas and directed Plaintiff to show cause as why the Court should not dismiss the claim against Alfredo, last name unknown. Plaintiff failed to do so and by order dated October 20, 2020, Judge Azrack dismissed all claims against Alfredo last name unknown. Plaintiff was further ordered to submit the evidence she identified in her letter to the Court for in camera review via email at azrack_chambers@nyed.uscourts.gov. A hearing on damages was scheduled for June 8, 2021 before Judge Azrack. Due to a scheduling conflict the hearing was canceled, and the issue

of damages was referred to the undersigned by order dated May 27, 2021. For the reasons set forth below, the undersigned respectfully recommends that Plaintiff be awarded (1) $77,913.50 in back pay and (2) $15,000 in compensatory damages for emotional distress.

## BACKGROUND

I.   **Factual Background**

The following facts are taken from the Complaint and the papers submitted in support of the motion for default judgment.

Plaintiff is an individual woman who is a resident of the State of New York, Suffolk County. Compl. ¶ 7. Defendant Bowls and Salads Mexican Grill Inc., d/b/a/ Alberts Pizza is a domestic limited liability company that does business in the State of New York. *Id*. at ¶ 8. Luis Rojas is alleged to be the owner of Alberts Pizza, and held supervisory authority over Plaintiff. controlling many of Plaintiff's job. *Id*. at ¶ 9.

Plaintiff alleges that she was hired on February 23, 2018. *Id*. at ¶ 11. Shortly thereafter (on or about March 13, 2018), a co-worker named Alfredo told Plaintiff that he thought she was beautiful and began blowing her kisses. *Id*. at ¶ 12. Plaintiff was uncomfortable and asked him to stop, however the next day Alfredo continued to blow kisses at Plaintiff despite Plaintiff's request that he stop immediately. *Id*. at ¶¶ 13-14. On or about March 15, 2018, Plaintiff told Alfredo that she has a boyfriend and reminded him that he had a girlfriend in an effort to convince Alfredo to refrain from blowing her kisses. Plaintiff also told Alfredo that she did not plan on cheating on her boyfriend and if he continued to flirt and blow her kisses, she would tell his girlfriend. *Id*. at ¶¶ 15-16. Alfredo replied that his girlfriend was unable to have children and that he was now looking for a "nice white mother" to have and raise his children. *Id*. at ¶ 17.

On or about March 21, 2018, Alfredo reached out to Plaintiff via Instagram and told her that she is beautiful and that he wanted kiss her. In response, Plaintiff told Alfredo that she "just want[ed] to be coworkers." *Id*. at ¶¶ 18-19. Apparently undeterred, on or about March 22, 2018, Alfredo approached Plaintiff and told her that he wanted to show her a picture of one of his tattoos on his phone. Instead, Alfredo showed Plaintiff a picture of his penis. Plaintiff was completely shocked, disgusted, and taken aback by Alfredo's lewd conduct. *Id*. at ¶¶ 20-22. The next day, Plaintiff complained to her supervisor Rojas that she was being sexually harassed and that Alfredo had shown her a picture of his penis. *Id*. at ¶ 23. Rojas took no reasonable or immediate action to help combat the hostile work environment. *Id*. at ¶ 24.

The harassment continued a week later, on March 26, 2018, when Alfredo deliberately brushed up against Plaintiff and attempted to rub her shoulders. That same day, Alfredo also asked Plaintiff if he could rub the powder residue from Plaintiff's latex gloves off of her pants. Plaintiff declined Alfredo's crude and sexually suggestive offer. *Id*. at ¶¶ 25-27. That same day, Alfredo again reached out to Plaintiff via Instagram and sent her a heart emoticon. *Id*. at ¶28.

On March 27, 2018, Plaintiff again complained to her supervisor Rojas about Alfredo's constant sexual harassment. Rojas verbally reprimanded Alfredo, however, the reprimand had no effect, and Rojas took no other reasonable or immediate action to help combat the hostile work environment. *Id*. at ¶¶ 30-31. The harassment continued the next day, when Alfredo asked Plaintiff to "love [him] long time" and attempted to offer Plaintiff money in exchange for sexual intercourse. *Id*. at ¶32. Plaintiff once again complained to Rojas, who took no reasonable or immediate action to help combat the hostile work environment. *Id*. at ¶¶ 33-34. On April 2, 2018, Alfredo continued to sexually harass Plaintiff and ask Plaintiff for hugs, and Plaintiff again complained to her supervisor Rojas of sexual harassment. *Id*. at ¶¶ 35-36. In response, Rojas

informed Plaintiff that he was going to fire Alfredo, but he first needed to hire someone else that could replace him. Despite these assurances from Rojas, Plaintiff was still forced to interact with Alfredo daily and Alfredo continued to sexually harass Plaintiff every shift they still worked together until April 11, 2018 when Alfredo was terminated. *Id*. at ¶¶ 37-39. On April 27, 2018, however, Alfredo was re-hired which led to Plaintiff's constructive termination because when she complained to Rojas she was told that she would need to "work together" with Alfredo "as a team." *Id*. at ¶¶ 40-43.

**II.     Procedural Background**

Plaintiff filed the complaint in this action on March 19, 2019. ECF No. 1. The summons and complaint and civil cover sheet were served on Defendants on April 30, 2019. ECF No. 11, 12, 13. Defendants never answered or otherwise responded to the complaint. On August 28, 2019, Plaintiff requested that the Clerk of the Court enter default against Defendants, which it did on August 29, 2019. ECF No. 19. On August 30, 2019, Plaintiff moved for a default judgment. ECF No. 20. In support of the Motion for Default Judgment, Plaintiff filed the Affirmation of Daniel Altaras in Support of Motion for Default Judgment ("Altaras Aff.") . By Order dated April 21, 2020, Judge Azrack granted Plaintiff's motion for liability as to Defendants Alberts Pizza and Rojas and ordered Plaintiff to: (i) show cause, in writing, why the Court should not deny Plaintiff's motion for a default judgment against defendant "Alfredo [Last Name Unknown]," and dismiss that defendant; and (ii) identify, in writing, the amount of damages she seeks to recover and the evidence she intends to submit to the Court in support of that damages request. ECF No. 21. Plaintiff responded by letter dated June 22, 2020 setting forth the damages requested by Plaintiff. ECF No. 22. On October 20, 2020 Judge Azrack dismissed the claims asserted against Alfredo last name unknown and directed plaintiff to submit

all evidence of damages to the court via email for an in camera review. A hearing on damages was scheduled before Judge Azrack for June 8, 2021. On May 27, 2021, the matter was referred to the undersigned to conduct a damage inquest. On May 28, 2021 the undersigned directed Plaintiff to provide documentary evidence of damages, include a clear breakdown of each element of damages. By letter dated June 14, 2021, Plaintiff submitted a letter describing Plaintiff's damages and attaching two pay stubs from Plaintiff's employment. ECF No. 23. On the same day, Plaintiff filed a motion seeking permission to file an expert report and treatment records under seal, which was granted.

To date, Defendants have not opposed the motion for default judgment or responded in any way.

## DISCUSSION

### I.     Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y.

1997).  The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

## II.  Damages

### A. Damages Calculation

"While a party's default is deemed to constitute concession of all well-pleaded allegations of liability, it is not considered an admission of damages. . . . Therefore, once a party's default as to liability is established, a plaintiff still must prove damages."  *Joseph v. HDMJ Rest., Inc.,* 970 F. Supp. 2d 131, 149 (E.D.N.Y. 2013).  The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.  An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted).  Here, the documentary evidence submitted by Plaintiff provides the basis for an award.[1]  *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

In the materials submitted in support of the motion for default judgment, Plaintiff alleges that she suffered loss of income, loss of employment benefits, and has suffered stress, mental anguish, and humiliation as a direct and proximate result of Defendants' acts.  Altaras Aff.  ECF No. 20, at ¶ 6.  According to a letter submitted by Plaintiff's counsel, which Plaintiff provided when directed by the Court to document her claim for damages, despite having been employed

---

[1] The Court notes that Plaintiff has failed to adhere to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York which require Plaintiff to include a proposed form of default judgment, (LOC. CIV. R. 55.2(b)) and to include a memorandum of law (LOC. CIV. R. 7.1(a)(2)).  These violations could provide reason for the Court to deny Plaintiff's motion, although the Court has discretion to overlook them. *See Lanzafame v. Dana Restoration, Inc.,* No. 09-CV-0873 (ENV) (JO), 2010 U.S. Dist. LEXIS 142194, 2010 WL 6267657, at *7 (E.D.N.Y. Aug. 12, 2010) ("[F]ailure to comply with the local rule requiring [plaintiff] to submit a memorandum of law . . . would be reason enough for the court to deny [the] motion in its entirety."), adopted by 2011 U.S. Dist. LEXIS 29341, 2011 WL 1100111 (Mar. 22, 2011); *Gustavia Home, LLC v. Vaz,* No. 17-CV-5307 (ILG) (RER), 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019) (excusing plaintiff's failure to submit proposed judgment), aff'd, 824 F. App'x 83 (2d Cir. 2020). The undersigned will report and recommend on Plaintiff's motion despite these failures.

by Defendants for only two months and four days, Plaintiff is seeking her annual salary at the time of the Plaintiff's date of termination times 10 years, plus bonuses, commissions, health insurance, pension, profit sharing and all other expected raises and benefits, reduced by earned income, compensation for emotional distress, punitive damages and attorneys' fees. In support of her economic damages claim, Plaintiff intends to rely on her paystubs from Bowls and Salads Mexican Grill Inc., d/b/a Alberts Pizza.  ECF No. 23.  The Court's analysis of Plaintiff's claims for damages is below.

> **B.** **Lost Wages**

A victim of employment discrimination is entitled to reasonable damages to make her "'whole for injuries suffered on account of unlawful employment discrimination.'" *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S. Ct. 2362, 2372 (1975)). "Two forms of economic damage are back pay (what is owed for the past) and front pay (what is owed for the future)." *Villalta v. JS Barkats, P.L.L.C.*, No. 16 Civ. 2772, 2021 U.S. Dist. LEXIS 75071, 2021 WL 2458699, at *9 (S.D.N.Y. Apr. 16, 2021), report and recommendation adopted, No. 16 Civ. 2772, 2021 U.S. Dist. LEXIS 75071, 2021 WL 2458023 (S.D.N.Y. June 14, 2021) (citation omitted).  Under Title VII, a prevailing plaintiff forfeits her right to back or front pay if she fails to mitigate damages by not using "reasonable diligence in finding other suitable employment." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982). The plaintiff's duty is "not onerous, and does not require [her] to be successful in mitigation." *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997) (internal quotations and citations omitted).

Plaintiff seeks $6,000,000 in wages for her Title VII and NYHRL claims against Defendants.  Plaintiff does not specify whether she is seeking back or front pay.  As a general

rule "front pay is awarded at the discretion of a district court where reinstatement is inappropriate and the plaintiff has been unable to find [a comparable] job." *Rodriguez v. Express World Wide, LLC,* No. 12-CV-4572, 2014 U.S. Dist. LEXIS 47978, at * 17, 2014 WL 1347369 (E.D.N.Y. Jan. 16, 2014). "'The purpose of front pay is to make victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.'" *Id.* (quoting *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 286 (2d Cir. 2011) (internal citations and punctuation omitted). An award of front pay is not mandatory and is within the court's discretion. *See Vernon v. Port Authority of N.Y. & N.J.*, 220 F. Supp. 2d 223, 236 (S.D.N.Y. 2002).

Here, as in *Rodriquez*, the Court finds that Plaintiff will be adequately compensated by an award of back pay. *See Rodriguez,* 2014 U.S. Dist. LEXIS 47978, at *18; *see also Quintero v Angels of the World,* No. 19-CV-6126 (DG), 2021 US Dist. LEXIS 172445, at *39, 2021 WL 4464123 (E.D.N.Y. Sept. 10, 2021). Moreover, before being awarded front pay, "a claimant is required to 'use reasonable diligence in finding other suitable employment.'" *Padilla v. Metro— North Commuter R.R.*, 92 F.3d 117, 125 (2d Cir. 1996) (emphasis omitted) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982)). In light of Plaintiff's failure to provide evidence of her efforts to find comparable work, an award of front pay would be speculative. *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992) ("an award of front pay cannot be unduly speculative").

Plaintiff, however, may be entitled to an award of back pay. *See, e.g., Noel v. N.Y. State Office of Mental Health Cent. Psychiatric Ctr.,* 697 F.3d 209, 213 (2d Cir. 2012) (noting that the remedial provisions of Title VII authorize back pay); *Reynolds v. Barrett*, 685 F.3d 193, 203 (2d Cir. 2012). Typically, back pay is calculated as "the wages the employee would have earned

8

from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits."[2] *United States v. Burke*, 504 U.S. 229, 239, 112 S. Ct. 1867, 119 L. Ed. 2d 34 (1992), superseded by statute on other grounds; *Noel v. New York State Office of Mental Health Cent. NY. Psychiatric Cent.*, 697 F.3d 209, 213 (2d Cir. 2012).  Where, as here, reinstatement is not requested, the plaintiff's entitlement to back pay is generally reduced or eliminated when she obtains, or could have obtained, employment elsewhere. *See* 42 U.S.C. § 2000e-5(g)(1) ("interim earnings or amounts earnable with reasonable diligence ... shall operate to reduce the back pay otherwise allowable"); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (vacating award of back pay, among other damages, for failure to mitigate); *Quintero,* 2021 US Dist. LEXIS 172445, at *38 ("Absent any particularized information concerning plaintiff's unemployment following her constructive discharge, the Court cannot recommend an award of back pay damages for the period postdating plaintiff's employment with [defendant]"); *Drice v. My Merch. Servs., LLC,* No. 15-CV-00395 (MKB) (MDG), 2016 U.S. Dist. LEXIS 29006, 2016 WL 1266866  (E.D.N.Y. Mar. 4, 2016), report and recommendation adopted, 2016 U.S. Dist. LEXIS 42779, 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016) (on motion for default judgment, denying back-pay award for period of time for which plaintiff had not submitted any evidence that she was unemployed).

However, "[e]ven a plaintiff who fails to mitigate 'is still entitled to an amount that would make [her] whole.'" *Angulo v. 36th Street Hospitality LLC*, No. 19-CV-5075, 2020 U.S. Dist. LEXIS 137816, 2020 WL 4938188, at *2-5 (S.D.N.Y. July 31, 2020) (quoting *RMoor*e, 2011 U.S. Dist. LEXIS 64452, 2011 WL 2470023, at *5). "To determine lost back pay, [the]

---

[2] While counsels letter states Plaintiff is seeking compensation for "bonuses, commissions, health insurance, pension, and profit sharing" no evidence has been provided that the terms of Plaintiff's employment as an hourly worker at Albert's Pizza included such fringe benefits.  Indeed, the pay stubs provided do not indicate any deductions for health insurance.

plaintiff's base annual compensation at the time of termination is multiplied by the length of time between termination and . . . the inquest." *Gutierrez v. Taxi Club Mgmt., Inc.*, No. 17 Civ. 532 (AMD) (VMS), 2018 U.S. Dist. LEXIS 106808, 2018 WL 3432786, at *7 (E.D.N.Y. June 25, 2018), adopted by 2018 U.S. Dist. LEXIS 118262, 2018 WL 3429903 (E.D.N.Y. July 16, 2018); *see Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144-45 (2d Cir. 1993). Here, according to the paystubs submitted by counsel, Plaintiff earned between $407 and $384 per week for an average of $395.50 per week. ECF No. 23, Ex. A. There are 197 weeks between April 27, 2018 and February 4, 2022, for a total back pay award of $77,913.50.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $77,913.50 in back pay.

### C. Emotional Distress Damages

Plaintiff seeks $3,000,000 in emotional distress damages for her Title VII and NYHRL claims against Defendants. Altaras Letter, ECF No. 23. Prevailing plaintiffs in Title VII actions may recover damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *See* 42 U.S.C. § 1981a(b)(3).

In the Second Circuit, where a plaintiff has succeeded on Title VII and NYHRL claims for emotional distress, courts have upheld a range of awards for compensatory damages, basing their decisions on whether emotional distress claim presented by plaintiff can be categorized as "garden-variety," "significant," or "egregious." *See Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46-47 (E.D.N.Y. 2009). In garden-variety claims, the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. *See id.* These claims typically lack

10

extraordinary circumstances and are not supported by medical testimony. *See id*. at 46. Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. *See id*. at 46-47. Egregious emotional distress claims yield the highest awards and are warranted only where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff. *See id*. at 47. When awarding compensatory damages, courts "have considered the duration, severity, consequences and physical manifestations of the mental anguish, as well as any treatment that plaintiff underwent as a result of her anguish." *Gleason v. Callanan Industr., Inc.*, 203 A.D.2d 750, 752, 610 N.Y.S.2d 671, 673 (2d Dep't 1994).

    For garden-variety emotional distress claims, courts in the Second Circuit have awarded damages ranging from $5,000 to $125,000, based upon the plaintiff's vague or conclusory testimony of distress. *See, e.g., Wharton v. County of Nassau*, No. 10-CV-0265(JS)(AYS), 2015 U.S. Dist. LEXIS 100308, 2015 WL 4611974 (E.D.N.Y. July 30, 2015) ("Courts have sanctioned jury damages ranging from $30,000 to $125,000 for "garden-variety" emotional distress"); *Manson v. Friedberg*, 08 CIV. 3890, 2010 U.S. Dist. LEXIS 145499, 2013 WL 2896971, at *7 (S.D.N.Y. June 13, 2013) (granting a $10,000 damage award for plaintiff who suffered low self-esteem, lacked confidence in herself, and lacked physical manifestations of her emotional distress); *Campbell v. Cellco P'ship*, No. 10 Civ. 9168, 2012 U.S. Dist. LEXIS 110346, 2012 WL 3240223 (S.D.N.Y. Aug. 6, 2012) (award reduced to $125,00 as the maximum allowable for a garden-variety emotional distress claim).

    Here, Plaintiff has failed to provide her own statement regarding her purported emotional distress and relies entirely upon a statement by Yaakov Siegel, Psy. D., prepared following a

11

single meeting with Plaintiff on September 3, 2018 and the notes from two sessions with The Care Center, Inc, which were focused on developmental issues with Plaintiff's son and at which she was provided parenting advise, diapers and wipes.  One of these sessions occurred on March 29, 2018 while Plaintiff was still employed by Defendants, and the other if from September 20, 2018.  Thus, no evidence has been provided indicating Plaintiff's emotional distress continued beyond September 2018.

The expert report states the Plaintiff "described the intense depression and anxiety symptoms that developed or were exacerbated as a result of the sexual harassment. She stated that she could not sleep and that she lost her appetite, resulting in weight loss. She was plagued self-doubt, intense intrusive negative thoughts, guilt and self-blame for allowing herself to be a victim of discrimination." Siegel Report at 5.  According to the report, Plaintiff described "ongoing symptoms, some of which interfere with her ability to maintain regular employment and therefore exacerbate her functional decline and stress. She explained, 'I constantly have anxiety now and wonder if it is something I am doing. I used to be proud but I never wear makeup anymore, I cover my tattoos and try to slide under the radar. I have anxiety walking around the streets.' She described feeling 'on edge' and experiencing heart palpitations." *Id*. These claims are similar to those in *Munson v. Diamond*, No. 15-CV-00425 (DAB) (BCM), 2017 U.S. Dist. LEXIS 85143, 2017 WL 4863096 (E.D.N.Y. June 1, 2017), where Plaintiff reported that she "experienced and continue[s] to experience distress, mental anguish, loss of self-esteem, anxiety, disturbed sleep, stomach problems, embarrassment, and migraines" and "felt intimidated, abused, anxious, [and] physically ill" as a result of Diamond's conduct. *Id*.

Further, Plaintiff here, just as the Plaintiff in *Munson*, was employed for approximately two months, and the offending co-worker was only working at the restaurant for one of those

12

months. Compl. ¶¶ 11, 12, 39, 40 43. Accordingly, the court finds Plaintiff's emotional distress claims are "garden variety" claims. Other courts in this District have awarded emotional distress damages in the range of $15,000 based on similarly general testimony that a hostile work environment caused the plaintiff "continued stress, anger, sadness and frustration," and that the plaintiff suffered from depression, panic attacks, headaches, nausea, loss of appetite, hives, and severe bouts of insomnia, even after her employment was terminated. *See, e.g., Munson v. Diamond*, No. 15-CV-00425 (DAB) (BCM), 2017 U.S. Dist. LEXIS 85143, 2017 WL 4863096 (E.D.N.Y. June 1, 2017) (plaintiff, employed for only two months awarded $15,000 in emotional distress damages); *Lippe v. Total Nutrition Holdings LLC,* No. 16-CV-167049, 2018 U.S. Dist. LEXIS 147582, 2018 WL 4473548, at *3 (E.D.N.Y. Aug. 28, 2018), report and recommendation adopted, No. 16-CV-7049, 2018 U.S. Dist. LEXIS 159256, 2018 WL 4471636 (E.D.N.Y. Sept. 18, 2018) (awarding $15,000 for garden variety emotional distress where plaintiff employed less than four months); *Drice*, 2016 U.S. Dist. LEXIS 29006, 2016 WL 1266866, at *7 (awarding $20,000 for emotional distress based on plaintiff's testimony that she "felt then, and still continue[s] to feel offended, disturbed, and humiliated" and "suffered and continue[s] to suffer from severe anxiety and depression" due to defendant's sexual harassment within short period of employment); *Manson v. Friedberg*, 2010 U.S. Dist. LEXIS 145499, 2013 WL 2896971, at *6 (S.D.N.Y. June 13, 2013) (awarding $10,000 for emotional distress for plaintiff's vague and conclusory testimony that she "had low self-esteem, felt 'unworthy' and 'was having a difficult time feeling trust'"); *Jowers v. DME Interactive Holdings, Inc.*, No. 00 CIV. 4753 LTS KNF, 2006 U.S. Dist. LEXIS 32536, 2006 WL 1408671 (S.D.N.Y. May 22, 2006) (collecting cases). Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $15,000 in emotional distress damages.

13

### D.     Punitive Damages

Plaintiff seeks $6,000,000 in punitive damages for her Title VII and NYHRL claims against Defendants.  Altaras Letter ECF No. 23.  A plaintiff may recover punitive damages on a successful a Title VII claim where the plaintiff "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [plaintiff's] federally protected rights."  42 U.S.C. § 1981a(b)(1).  Malice and reckless indifference refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."  *Farias v. Instructional Sys.*, 259 F.3d 91, 101 (2d Cir. 2001) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535, 119 S. Ct. 2118, 2124, 144 L. Ed. 2d 494 [1999])(internal quotation marks omitted).  "As an alternative to proving that the defendant knew it was acting in violation of federal law, egregious or outrageous actions may serve as evidence supporting an inference of the requisite 'evil motive.'"  *Id.*; *see also Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (courts should consider the presence or absence of "[a]ggravating factors," including "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct"); *Manswell v. Heavenly Miracle Acad. Servs.,* No. 14-CV-7114(MKB)(SMG), 2017 U.S. Dist. LEXIS 136366 (E.D.N.Y. Aug. 23, 2017).  The purpose of such damages is "to punish the defendant and to deter him and others from similar conduct in the future."  *Lee v. Edwards*, 101 F.3d at 809 (citation and quotation marks omitted).

Plaintiff has failed to provide any support for her claim of punitive damages.  In counsel's letter he states that punitive damages are warranted because the conduct was intentional.  This statement by counsel fails to demonstrate that the conduct was so outrageous or

14

egregious that it constituted an evil motive Plaintiff "is not entitled to punitive damages because she failed to produce evidence of either egregious discriminatory actions or reckless indifference to the law." *Becerril v. Ease Bronx NAACP Child Dev. Ctr.,* No. 08 Civ. 10283 (PAC)(KNF), 2009 U.S. Dist. LEXIS 85383, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009). Accordingly, the undersigned respectfully recommends that Plaintiff's request for an award of punitive damages be denied.

### E. Attorney's Fees and Costs

Plaintiff seeks attorneys' fees for her Title VII and NYHRL claims against Defendants. Altaras Letter, ECF No. 23. As a general matter in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee'") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)) (and following *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010)). The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 130 S. Ct. at 1672 (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." Id. at 1673 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to

15

establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190.

The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson,* 465 U.S. 886, 895 n.11, (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, see *Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011). "Attorney fee applications that do not contain such supporting data 'should normally be disallowed.'" *Molina v. J. F. K. Tailor Corp.*, No. 01 Civ. 4016 (RLC)(KNF), 2004 U.S. Dist. LEXIS 7872 (S.D.N.Y. Apr. 30, 2004) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Plaintiff here has failed to provide a shred of evidence supporting her claim for attorneys' fees. Plaintiff has failed to provide contemporaneous billing records for attorneys involved, or even a list of attorneys involved and their billing rates. Indeed, Plaintiff has failed to even state the amount requested. Accordingly, Plaintiff has failed to meet her burden of establishing the reasonableness of the fees requested and therefore the undersigned respectfully recommends that no attorney's fees be awarded.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiff shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        February 3, 2022                                   _____/s/_____
                                                           ARLENE R. LINDSAY
                                                           United States Magistrate Judge